LUCY PAGE, Adm'x, *v.* W. L. GILLENTINE *et al.*

TRUST. *Parol. Resulting. Husband and wife. Evidence.* A parol trust between husband and wife in relation to land is void as to the creditors of the husband, and a resulting trust in land in favor of the wife, after the husband had exchanged the original tract for another, sold the latter, and taken the purchase notes in his own name, cannot be established upon the unsupported testimony of the husband and wife.

FROM OVERTON.

Appeal from the Chancery Court at Livingston. W. G. CROWLEY, Ch.

J. D. GOODPASTURE for complainant.

W. E. B. JONES for defendants.

COOPER, J., delivered the opinion of the court.

Bill filed November 3, 1873, by Lucy Page, administratrix of John S. Page, deceased, as a judgment creditor of the defendant, W. L. Gillentine, upon a debt contracted by him in 1863, to subject to the satisfaction of her demand certain lands alleged to have been bought by Gillentine, who caused the bonds for title to be made to his wife, Sarah E. Gillentine. The husband and wife answered, claiming that the lands were bought with the means of the wife, and she filed a cross-bill to have the lands settled to her sole and separate use.

A statement of the facts, about which there is no dispute, in chronological order, will aid us in arriving at a conclusion as to the matters of controversy. W. L. and Sarah E. Gillentine intermarried in 1851. In the year 1856 the husband bought from Samuel Miller a tract of land in White county for $800, and took the title to himself. In the spring of 1863 he exchanged this land with John S. Page, the intestate of complainant, for a tract of land in Fentress county, giving about $1,000 to boot. The trade was consummated by Gillentine conveying to Page the land in White county and Page conveying to Gillentine the land in Fentress county. Afterwards, the exact date not appearing, but probably in 1869, W. L. Gillentine sold and conveyed the Fentress county land to Gooding and Cooper, taking the purchase notes paya-

16—VOL. 6.

ble to himself. Subsequently he bought the Hinson tract of land in Overton county, at the price of $700, of which $500 were paid out of the proceeds of the Fentress county land, and caused the bond for title or deed of conveyance to be made out to his wife. The answer says that on October 3, 1873, before the filing of the complainant's bill, this land was sold and conveyed to a third person for $900, of which $600 were paid. Although the bill seeks to reach this land, the record is elsewhere silent on the subject, and that part of the relief sought seems to have been abandoned.

On November 25, 1872, W. L. Gillentine made a contract for the purchase of a little over the undivided half of a tract of land known as the Cox place, for $825, paying for the same in two of the notes given for the Fentress county lands, provided the same could be collected, and he caused the title bond to be made to his wife. On December 3, 1872, he bought another undivided share of the Cox land, paying about $180 with the balance due upon one of the notes given for the Fentress land, his wife giving her note for $121.25, and the bond for the title being made to her. Since the filing of the bill on March 28, 1874, the husband and wife have bought another share of the land, paying $135 in an execution against third persons, apparently in favor of the husband, the wife giving her note for $166.65, and the bond for title being made to her. The bill seeks to reach the interest acquired in this tract of land as the property of the husband.

The title to the Miller land having been taken to W. L. Gillentine, under the purchase made in 1856, and the title to the Fentress land, for which it was exchanged in 1863, having also been taken to him, and he having sold that land and received the consideration in notes made payable to him, the land bought with that purchase money would be *prima facie* the land of the husband, and, his insolvency in other respects being conceded, the taking of the bonds for title in the name of the wife would be either a fraudulent device to delay his creditors, or a voluntary conveyance equally void as to his then existing creditors. Even if the money invested in these several purchases had been the separate property of the wife, without any restriction upon her power of disposition, the money would *prima facie* have been so used and vested in property in the husband's name, with the wife's knowledge and consent, that she could have no equity against the creditors of the husband in the land: *Baldwin* v. *Baldwin*, 2 Hum., 473. The presumption would be still stronger against the wife, where the original fund claimed as hers was such that the husband had the right to reduce it to possession. Each investment would have been a reduction into possession, unless clearly shown to have been stamped with the character of separate estate in some mode recognized by law as good against creditors. It is conceded that there is no writing, and a parol trust, as we have recently held, would be void as to creditors under our registration laws: *Martin* v. *Lincoln*, 4 Lea.

The proof is, that Sarah E. Gillentine received from the administrator of her father's estate $500 in 1856, and $1,300 in 1862. She also received, in 1867, $300 from the estate of a deceased brother, and about 1871, $300 more. The case made by the answer is, that the money which the wife was entitled to receive from her father's estate should be invested in the Miller land and the title taken to her; that when the Miller land was exchanged for the Fentress county land, it was agreed between the husband and wife that the exchange should be made and the title taken to her, the excess in the price being paid principally with mules which they say were bought with money received from the father's estate; that the wife again consented to the sale of the Fentress land upon the condition that the proceeds should be invested in property for her, and that the Overton county land in dispute was bought accordingly. If, after the use by the husband in his own name, for sixteen years as to part and ten years as to the residue, of funds received in right of the wife, which he was entitled to reduce to possession, it be permissible to set up a parol agreement between husband and wife which would be operative against the creditors of the husband, the proof ought to be very clear, and the principle of law on which such an agreement could be made effective well established : *McCammon* v. *Pettitt*, 3 Sneed, 242; *Hyden* v. *Hyden*, 6 Baxt., 406.

The supposed agreements rest entirely upon the testimony of the husband and wife. Two of the wife's brothers, it is true, do say that about the time

the Miller land was purchased it was understood in the family, or rather, that their mother and sister talked about it, that the title to the land was to be made to her. But each of these brothers concedes that he never was present at the making of any agreement between husband and wife, and never heard the husband speak on the subject, and neither of them ever heard of any subsequent agreement. The case rests, therefore, upon the testimony of the husband and wife.

The husband proves as a fact, that, although he and his wife joined in the receipt for the money derived from the father's estate, he went after and received it, retaining it until he paid it to Miller, or invested it in personal property. Of the money not invested in the land and personalty, he says his wife used some in trading around, and he thinks it likely he used some of it himself, and perhaps without asking her permission. When asked what was the contract between him and his wife, he says: "I promised her that if we traded for the land the title should be made to her, provided she paid for it out of her moneys, and she agreed to it." When asked what the contract was at the time of the exchange of lands, he says: "I promised her if she would swap the land that the Fentress land should be taken in her name, and she agreed to it." And so, as to the sale of the Fentress land, the answer is general and to the same effect. The wife's testimony is similar in form. There is no detail of time or circumstance in either transaction to give even the appear-

ance of verity to the testimony. No witness was called in to attest the agreement, nor any notice given to the persons with whom the transactions were had. The evidence, in view of the lapse of time and long acquiescence in the acts of the husband, is wholly insufficient to establish a trust against the husband's creditors. And this would be clearly so if the husband's testimony be excluded as incompetent : *Hyden* v. *Hyden*, 6 Baxt., 406 ; *Patton* v. *Wilson*, 2 Lea, 101. The only trust which would be effective against them would be a resulting trust in the specific property bought with the wife's money at the time the title passed. But the Miller land and Fentress land have been sold to innocent purchaser's, and are not sought to be reached. There can be no such trust in the notes given for the latter land, these notes being a reduction of the fund into the possession of the husband.

Reverse the decree, and enter a decree here in favor of the complainant with costs, and order a sale of the interest in the Cox lands in satisfaction thereof.